**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

DANNY WILLIAMS, et als.,

　　**Plaintiffs,**

　　　　**v.**

COMMONWEALTH OF PUERTO RICO, et als.,

　　**Defendants.**

**CIVIL NO.** 12-1218 (FAB)

**OPINION AND ORDER**

BESOSA, District Judge.

　　Before the Court is the motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") filed by defendants Police Department, Department of Justice, the Commonwealth of Puerto Rico, and the Puerto Rico Superior Court (collectively, "defendants"). (Docket No. 15.) For the reasons discussed below, the Court **GRANTS** defendants' motion to dismiss.

**I.   BACKGROUND**

**A.   Factual & Procedural History**

　　On April 10, 2012, plaintiffs Danny Williams ("Williams") and Ruben Gonzalez Lora ("Gonzalez") filed an amended complaint, alleging that Puerto Rico's Weapons Act of 2000 ("P.R. Weapons Act"), P.R. Laws Ann. tit 25, §§ 455-460(k), is facially invalid pursuant to the Second and Fourteenth Amendments to the United

States Constitution.  (Docket No. 5.)  Plaintiffs seek damages and injunctive relief pursuant to 42 U.S.C. § 1983.

On September 8, 2011, plaintiff Gonzalez, a law student at the Interamerican University in Puerto Rico, requested a permit to carry a weapon pursuant to section 456d of the P.R. Weapons Act. Id. at pp. 3 & 5.  Judge Gisela Alfonso Fernandez ("Judge Alfonso") of the Puerto Rico Superior Court denied plaintiff Gonzalez's petition after he failed to provide three sworn statements from reputation witnesses, a sworn statement to the effect that he filed his Commonwealth taxes, and a certificate from child support stating that he had no debt.  Id. at p. 5.  On October 11, 2011, plaintiff Williams, an active duty Coastguardsman, also requested a permit to carry a weapon pursuant to section 456d.  Id. at pp. 3 & 5.  Because his application was missing necessary papers—income tax returns and testimony by three reputation witness—Judge Alfonso also denied his petition on November 7, 2011.  Id. at p. 5.

In their amended complaint, plaintiffs argue (1) that the Puerto Rico government may not license the right to keep and bear arms, pursuant to the Second Amendment to the U.S. Constitution; (2) that the P.R. Weapons Act discriminates against average citizens and favors certain government officials; (3) that sections 456a and 456d of the P.R. Weapons Act unconstitutionally vest

uncontrolled discretion in the hands of state officials; and (4) that the filing requirements contained in sections 456a and 456d are unconstitutional. Id. at pp. 6-7.

On July 12, 2012, defendants filed a motion to dismiss, arguing (1) that neither plaintiff has standing to challenge the constitutionality of section 456a; (2) that plaintiffs fail to establish a violation of the Second and Fourteenth Amendments pursuant to 42 U.S.C. § 1983; and (3) that the P.R. Weapons Act is constitutional under an intermediate scrutiny standard of review.[1] (Docket No. 15.)

**B.    Rule 12(b)(6) Standard**

Pursuant to Rule 12(b)(6), the Court can dismiss a complaint that fails to state a claim upon which relief can be granted. When assessing whether a plaintiff's complaint provides "fair notice to the defendants" and states "a facially plausible legal claim," the Court must utilize a two-pronged approach. See Ocasio-Hernandez v. Fortuño-Burset, 640 F.3d 1, 11-12 (1st Cir. 2011). First, the Court can disregard statements that "offer legal conclusions couched as fact," because the plaintiff must do more

---

[1] Although defendants classify their motion to dismiss as only pursuant to Rule 12(b)(6), the Court notes that an argument regarding plaintiffs' lack of standing is properly brought under Rule 12(b)(1).

than "parrot the elements of the cause of action."  Id. at 12.

Second, the Court is bound to treat all "properly pled factual

allegations" as true and draw all reasonable inferences in the

plaintiffs' favor.  Id.  The Court must base its determination

solely on the material submitted as part of the complaint and

expressly incorporated within it.  See Alternative Energy, Inc. v.

St. Paul Fire and Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001).

        The factual material pleaded must be sufficient "to raise

a right to relief above the speculative level," and to permit the

Court to "draw the reasonable inference that the defendant is

liable for the misconduct alleged."  Id. (quoting Ashcroft v.

Iqbal, 556 U.S. 662, 678 (2009)).  The Supreme Court has held that

a plaintiff's pleading must cross "the line between possibility and

plausibility."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 577

(2007).  A district court should not attempt to forecast the

likelihood of success even if proving the alleged facts is

"improbable."  Id. at 556.  A complaint that contains a plausible

basis for relief, therefore, "may proceed even if it appears that

a recovery is very remote and unlikely."  Id. at 556 (internal

citation omitted).  The Court will draw "on its judicial experience

and common sense" in evaluating the complaint's plausibility.

Grajales v. P.R. Ports Auth., 682 F.3d 40, 44 (1st Cir. 2012)
(internal citation omitted).

## II. DISCUSSION

The Court addresses in turn the following three arguments
contained in defendants' motion to dismiss: First, that neither
plaintiff has standing to challenge the constitutionality of
section 456a; second, that plaintiffs fail to establish a violation
of the Second and Fourteenth Amendments pursuant to 42 U.S.C. §
1983; and third, that the P.R. Weapons Act is constitutional under
an intermediate scrutiny standard of review.

### A.   Constitutional Standing

#### 1.   Standard

"Article III of the United States Constitution
limits the judicial power of the United States to the resolution of
cases and controversies." Valley Forge Christian Coll. v. Ams.
United for Separation of Church & State, 454 U.S. 464, 471 (1982)
(internal quotations omitted).  A crucial part of the case and
controversy limitation on the power of federal courts is the
requirement that a plaintiff must have standing to invoke federal
jurisdiction.  Id. at 471-73.  "[S]tanding is a threshold issue"
and determines whether a federal court has "the power to hear the
case, and whether the putative plaintiff is entitled to have the

court decide the merits of the case." Libertad v. Welch, 53 F.3d 428, 436 (1st Cir. 1995) (internal citation omitted). If a plaintiff lacks standing to bring a matter to federal court, a district court lacks jurisdiction to decide the merits of the case and must dismiss the complaint. United States v. AVX Corp., 962 F.2d 108, 113 (1st Cir. 1992).

To establish Article III standing, plaintiffs must show that they have a "personal stake in the outcome" of the claim asserted by meeting a three-part test. Pagan v. Calderon, 448 F.3d 16, 27 (1st Cir. 2006) (citing Baker v. Carr, 369 U.S. 186, 204 (1962)) (internal citations omitted). They must show: "(1) a concrete and particularized injury in fact, (2) a causal connection that permits tracing the claimed injury to defendants' actions, and (3) a likelihood that prevailing in the action will afford some redress for the injury." Weaver's Cove Energy, LLC v. R.I. Coastal Res. Mgmt. Council, 589 F.3d 458, 467 (1st Cir. 2009) (internal quotations omitted). The Supreme Court has held that the party invoking federal jurisdiction bears the burden of establishing these elements. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992) (internal citations omitted). Moreover, the standing inquiry is claim-specific: a plaintiff must have standing to bring each and every claim that he asserts. Katz v. Pershing, LLC, 672

F.3d 64, 71–72 (1st Cir. 2012) (citing Pagan, 448 F.3d at 26).

Because they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, "each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of litigation." Katz, 672 F.3d at 71 (internal citation omitted). At the pleading or motion to dismiss stage, "general factual allegations of injury resulting from the defendant's conduct may suffice." Lujan, 504 U.S. at 561 (internal citation omitted).

The first element of Article III standing is an injury in fact, defined as "an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical." Lujan, 504 U.S. at 560 (footnote, citations, and internal quotations omitted). The First Circuit Court of Appeals has noted that these characteristics are distinct. See Katz, 672 F.3d at 71. "Particularity demands that a plaintiff must have personally suffered some harm[, and . . . t]he requirement of an actual or imminent injury ensures that the harm has either happened or is sufficiently threatening; it is not enough that the harm might occur at some future time." Id. The final two elements of standing are causation and redressability.

Causation requires a plaintiff to show a sufficiently direct causal connection, which "cannot be overly attenuated," between the challenged action and the identified harm. <u>Donahue v. City of Boston</u>, 304 F.3d 110, 115 (1st Cir. 2002). Because the opposing party must be the source of the harm, causation is absent if the injury stems from the independent action of a third party. <u>See Simon v. E. Ky. Welfare Rights Org.</u>, 426 U.S. 26, 41-42 (1976). Redressability requires a plaintiff to show that a favorable resolution of his or her claim would likely remedy the professed injury. Redressability is a matter of degree, and to satisfy this requirement, the plaintiff "need not definitively demonstrate that a victory would completely remedy the harm." <u>Antilles Cement Corp. v. Fortuño</u>, 670 F.3d 310, 318 (1st Cir. 2012).

### 2. Analysis

Defendants argue that plaintiffs do not have standing to challenge the constitutionality of the licensing requirements of section 456a of the P.R. Weapons Act because each

plaintiff already possesses a weapons license.[2]  (Docket No. 15 at

pp. 12–13.)  They contend that plaintiffs "have nothing at stake"

regarding a determination by the Court because plaintiffs will be

unable to demonstrate a concrete and particularized injury in fact,

or a likelihood that prevailing in the action will afford some

redress for the injury.  Id.  Plaintiffs respond that their

concrete and particularized injury in fact arises out of section

456a's requirement that any person who possesses a weapons license

and wants to maintain it must renew it every five years and re-

submit the remuneration and documentation.  (Docket No. 17 at p.

13.)  In their reply, defendants argue that plaintiffs' response

means "the issue is not ripe for consideration given that there is

no imminent action by the state that would require redress."

(Docket No. 22 at p. 3.)

_____

[2] Defendants do not dispute that a permit denial pursuant to section 456d's administrative scheme constitutes an injury. Plaintiffs assert a right to a permit under section 456d of the P.R. Weapons Act, the denial of which the First Circuit Court of Appeals recognizes as an Article III injury. See Hightower v. City of Boston, 693 F.3d 61, 70 (1st Cir. 2012) (quoting Parker v. District of Columbia, 478 F.3d 370, 376 (D.C. Cir. 2007) (stating that statutory classifications used to bar ownership of a permit, and "the formal process of application and denial, however routine, makes the injury to [one's] alleged constitutional interest concrete and particular").  Accordingly, because plaintiffs' amended complaint alleges that they applied for and were denied a permit under section 456d, it is clear that plaintiffs have standing to challenge the constitutionality of that section.

The Court disagrees that plaintiffs lack standing to challenge section 456a and that their "Second Amendment right is safeguarded by the weapons license which they already possess." Plaintiffs' concrete and actual injury arises from the fact that they both have paid the application fees and submitted the requisite money, certificates, forms, and statements that are challenged as unconstitutional under section 456a. The economic injury they sustained to obtain the weapons license is a sufficient basis for standing. The Court considers the constitutional standing issue to be a close one, however, given plaintiffs' prayer for declaratory and injunctive relief. To establish standing for a claim of declaratory and injunctive relief, a plaintiff must establish that future harm is both imminent and likely. See Los Angeles v. Lyons, 461 U.S. 95, 105 (1974). In this case, plaintiffs demonstrate a likelihood of future injury because in order to maintain their weapons licenses, they will have to renew the licenses—a process that requires compliance with all of section 456a's provisions. (Docket No. 17; P.R. Laws Ann. tit 25 § 456a.) Because the Court does not consider the future injury to be "hypothetical," "speculative," or "conjectural," McInnis-Misenor v. Me. Med. Ctr., 319 F.3d 63, 71 (1st Cir. 2003), it finds that

plaintiffs have demonstrated an injury in fact under the first element of standing.

Plaintiffs have also demonstrated both causation and redressability sufficient for standing. They allege that because the P.R. Weapons Act's license and permit requirements impermissibly burden plaintiffs' Second Amendment right to keep and bear arms, the enforcement of sections 456a and 456d is the cause of their harm. Further, a declaratory judgment or injunction granted by this Court would likely redress plaintiffs' claims because they would alleviate the burden posed by sections 456a and 456d on plaintiffs' ability to obtain a permit to carry a weapon and to maintain their weapons licenses. Accordingly, the Court finds that both plaintiffs have standing to challenge section 456a and declines to grant defendants' motion on standing grounds.

**B.    Failure to State a Claim Pursuant to 42 U.S.C. § 1983**

Defendants next argue that plaintiffs fail to establish a violation of the Second and Fourteenth Amendments under 42 U.S.C. § 1983 ("section 1983"). To state a claim pursuant to section 1983, plaintiffs must plausibly plead (1) that they were deprived of a constitutional right; (2) that a causal connection exists between defendants' conduct and the constitutional deprivation; and (3) that the challenged conduct was attributable to a person acting

under color of state law.  Sanchez v. Pereira-Castillo, 590 F.3d
31, 41 (1st Cir. 2009) (citing 42 U.S.C. § 1983).  Defendants
submit that plaintiffs cannot establish a deprivation "of the
rights, privileges, or immunities secured by the Constitution or
other laws of the United States" for two reasons.  First,
"plaintiff's [sic] current status as weapons license holders
protects their rights under the Second Amendment.  Nothing in their
current position prevents them from possessing a firearm in their
home for the purpose of self defense."  (Docket No. 15 at p. 15.)
Second, the permit to carry a firearm "is a privilege and not a
right protected by the Second Amendment by way of the Fourteenth
Amendment."  Id.

        Defendants' first argument, as a mere reiteration of its
standing argument, is inconsequential.  Plaintiffs' constitutional
challenge to section 456a is framed as a facial challenge.  (Docket
No. 5 at p. 2.)  In the case of a facial constitutional challenge,
once standing is established, the individual application of facts
is not at issue, and a plaintiff's personal situation becomes
irrelevant.  See Ezell v. City of Chicago, 651 F.3d 684, 697 (7th
Cir. 2011) (citing Reno v. Flores, 507 U.S. 292, 300-01 (1993)).
Accordingly, that plaintiffs already possess a weapons license does

not mean they have failed to state a claim for their facial
challenge to the P.R. Weapons Act.

Defendants' second argument, however, cuts to the
foundation of plaintiffs' constitutional challenge. "A statute is
presumed constitutional, and the burden is on the one attacking the
legislative arrangement to negative every conceivable basis which
might support it, whether or not the basis has a foundation in the
record." Heller v. Doe, 509 U.S. 312, 320-21 (1993) (internal
quotations and citations omitted). A facial challenge to a
legislative act, moreover, is considered "the most difficult
challenge to mount successfully, since the challenger must
establish that no set of circumstances exists under which the act
would be valid." Salerno, 481 U.S. at 745. To prevail on a facial
challenge,[3] plaintiffs must therefore establish that "no set of
circumstances exist under which [P.R. Weapons Act sections 456a and
456d] would be valid." McGuire v. Reilly, 386 F.3d 45, 57 (1st

---

[3] The Supreme Court has explained that facial challenges are
inherently disfavored because they "rest on speculation," "raise
the risk of premature interpretation of statutes on the basis of
factually barebones records," "run contrary to the fundamental
principle of judicial restraint," and "threaten to short circuit
the democratic process by preventing laws embodying the will of the
people from being implemented in a manner consistent with the
Constitution." Hightower, 693 F.3d at 76-77 (citing Sabri v.
United States, 541 U.S. 600, 609 (2004); Ashwander v. TVA, 297 U.S.
288, 347 (1936); Ayotte v. Planned Parenthood of Northern New Eng.,
546 U.S. 320, 329 (2006)).

Cir. 2004) (quoting United States v. Salerno, 481 U.S. 739 (1987).

"[T]his standard imposes a very heavy burden on a party who mounts

a facial challenge to a state statute." McCullen v. Coakley, 571

F.3d 167, 174 (1st Cir. 2009).

The Court finds that plaintiffs have not established in

their amended complaint that the challenged sections of the P.R.

Weapons Act would be invalid under all circumstances.  Accordingly,

plaintiffs' facial constitutional challenge does not state a claim

upon which relief may be granted.[4]  See Hightower, 693 F.3d at 78;

United States v. Salerno, 481 U.S. 739, 745 (1987); McCullen v.

Coakley, 571 F.3d 167 (1st Cir. 2009); Del Gallo v. Parent, 557

F.3d 58, 68 (1st Cir. 2009).  In an abundance of caution, however,

the Court addresses plaintiffs' claim on the merits and

nevertheless finds that sections 456a and 456d are constitutional.

## C.   Constitutionality of Sections 456a and 456d

### 1.   The Terms of the P.R. Weapons Act

In Puerto Rico, the possession, carrying or using of

any firearm without a license is a criminal felony offense.  See

---

[4] As the First Circuit Court of Appeals has recognized, an
attack that a statutory requirement confers too much discretion and
is not sufficiently connected to a sufficient government interest
"does not establish that there is no 'plainly legitimate sweep' of
circumstances" where an applicant may properly be denied a license
or permit to carry a weapon.  See Hightower, 693 F.3d at 78.

P.R. Laws Ann. tit 25, §§ 455-460k.  A weapons license is defined
as "the license issued by the [Puerto Rico Police] Superintendent
that authorizes the concessionaire to possess, carry and transport
arms and ammunition, and, depending on their category, to carry
firearms, target shooting or hunting."  P.R. Laws Ann. tit. 25,
§ 455.  To obtain a weapons license, a petitioner must satisfy a
list of fourteen requirements.  See id. at § 456a.  Plaintiffs in
this case challenge the constitutionality of four of those
requirements: (1) the submission of a sworn statement attesting to
compliance with fiscal laws; (2) the purchase of a $100 internal
revenue stamp payable to the Puerto Rico Police; (3) the submission
of a sworn statement from three witnesses attesting to the fact
that the petitioner enjoys a good reputation in the community, does
not have a tendency to commit acts of violence, and that the
witness has no objection to the petitioner owning a firearm; and
(4) the submission of a negative certification of debt from the
Child Support Administration.  (See P.R. Laws Ann. tit 25, §§
456(a)(10)-(14); Docket No. 5.)  Plaintiffs also claim that section
456a is facially invalid because it licenses a fundamental right
and because it vests state officials with uncontrolled discretion
to grant or deny weapons licenses.  (Docket No. 5 at p. 10.)

Section 456d of the P.R. Weapons Act governs the granting of a permit to carry a weapon.  To apply for a permit to carry a weapon, a petitioner must have obtained a weapons license pursuant to section 456a.  Plaintiffs challenge the following requirements necessary to obtain a permit to carry a weapon: (1) the same application requirements contained in section 456a challenged above–the submission of third party affidavits, proof of state tax and child support payments, and a physical and mental abilities certification; (2) a sworn statement confirming that all requirements established in section 456a are met and that the entire contents of the application are true and correct; (3) the payment of a $250 internal revenue voucher payable to the Superintendent; and (4) a certification issued by an authorized official of a gun club in Puerto Rico, stating that the petitioner has passed a course in the correct and safe use and handling of firearms.  (See P.R. Laws Ann. tit 25, § 456d; Docket No. 5.) Plaintiffs also argue that section 456d is facially unconstitutional because it vests the Superior Court of Puerto Rico judges with uncontrolled discretion to issue or refuse to grant permits to carry.  (Docket No. 5.)

### 2.    The Second Amendment Right to Bear Arms

The Second Amendment provides, "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II.   In United States v. Heller, the Supreme Court found for the first time that the Second Amendment secured an individual, not just a collective, right to bear arms.   554 U.S. 570, 576-95 (2008).   It elevated "above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home."   Id. at 635.   The Court also declared, however, that restraints exist on the Second Amendment right, which is not absolute:

> Like most rights, the right secured by the Second Amendment is not unlimited . . . . [N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.[5]

Id. at 626-27.   The Supreme Court reiterated this reasoning in McDonald v. City of Chicago, 130 S. Ct. 3020, 3047 (2010), stating, "We made it clear in Heller that our holding did not cast doubt on

---

[5] In an accompanying footnote, the Supreme Court offered an important clarification of this passage: "We identify these presumptively lawful regulatory measures only as examples; our list does not purport to be exhaustive." Id. at 627 n.26.

such longstanding regulatory measures . . . . We repeat those assurances here . . . . [I]ncorporation does not imperil every law regulating firearms."

The Supreme Court in <u>Heller</u> and <u>McDonald</u> left many issues unresolved, however, and in the wake of those decisions, lower courts have been faced with attempting to discern both the outer limits of Second Amendment rights and the level of scrutiny that should be applied to laws burdening those rights. <u>See</u> <u>Hightower</u>, 693 F.3d at 72 n.8; <u>United States v. Masciandaro</u>, 638 F.3d 458, 466-67 (4th Cir. 2011). The First Circuit Court of Appeals recently declined to reach the issue of the Second Amendment's scope as to carrying firearms outside the vicinity of the home, but it recognized the widespread disagreement between district courts regarding that matter. <u>See</u> <u>Hightower</u>, 693 F.3d at 72 n.8. It ultimately reasoned, however, that the interest "in carrying concealed weapons outside the home is distinct from this core interest emphasized in <u>Heller</u>." <u>Id.</u> at 72. Interpreting <u>Heller</u>'s language that "[l]icensing of the carrying of concealed weapons is presumptively lawful," the First Circuit Court of Appeals held that "the government may regulate the carrying of concealed weapons outside of the home." <u>Hightower</u>, 693 F.3d at 73.

### 3.   Constitutional Analysis of Sections 456a and 456d

Plaintiffs attack the constitutionality of the P.R. Weapons Act by: (1) arguing that sections 456a and 456d are unconstitutional simply by virtue of licensing weapons possession in Puerto Rico; (2) claiming that the Police Superintendent, state officials, and Superior Court judges have uncontrolled discretion in granting or denying weapons licenses and permits to carry weapons; (3) objecting to the various requirements in sections 456a and 456d as undue burdens on their Second Amendment rights; and (4) arguing that the P.R. Weapons Act is discriminatory against the average citizen in favor of certain current and former government officials. (See Docket No. 5.)  The Court finds all of plaintiffs' contentions unavailing.

### a.   Regulation is Not Unconstitutional

In light of the previously mentioned Supreme Court and First Circuit Court of Appeals case law declaring regulations on the carrying of weapons outside the home presumptively lawful, plaintiffs' contention that the mere

licensing of weapons in Puerto Rico is unconstitutional fails.[6]
See Heller, 554 U.S. at 626-27; McDonald, 130 S. Ct. at 3047;
Hightower, 693 F.3d at 73-74.  Plaintiffs inform the Court of and
rely on a recent Seventh Circuit Court of Appeals case, Moore v.
Madigan, 2012 U.S. App. LEXIS 25264 (7th Cir. 2012), to argue that
a right to carry firearms outside the home exists under the Second
Amendment, and that any regulation of that right is
unconstitutional.  (Docket Nos. 5; 17; 30.)  While Moore indicates
that the right to bear arms for self-defense "is as important
outside the home as inside," 2012 U.S. App. LEXIS 25264 at *22, the
Seventh Circuit Court of Appeals ultimately struck down the
Illinois statute in question for its uniquely restrictive, flat ban
on carrying guns outside the home.  Id. at *29.

          The Court can readily distinguish the facts of
this case from those in Moore.  The law at issue in Moore posed a
complete prohibition on the possession of a handgun in public.
2012 U.S. App. LEXIS 25264 at *21.  To the contrary, sections 456a

---

          [6]  Plaintiffs offer very little authority for their
proposition, citing only a recent Seventh Circuit Court of Appeals
case.  Without having any additional legal authority to consider,
the Court is unpersuaded by plaintiffs' contention that "regulating
a right and licensing a right [are] two very different things"-a
conclusion they reach by merely comparing the definitions of
"license" and "regulation" contained in the Merriam-Webster
Dictionary.  (See Docket No. 17 at pp. 11-13.)

and 456d of the P.R. Weapons Act do not enforce a total prohibition on an individual's right to carry a firearm; rather, they allow any petitioner to gain lawful possession of or to carry a handgun by complying with certain statutory requirements.  See United States v. Colon-Quiles, 859 F. Supp. 2d 229, 233 (D.P.R. 2012).  As cases like Heller, McDonald, Hightower, and Moore make clear, it is the complete ban of weapons—not the mere regulation by licensing or requiring permits—that is unconstitutional.  Heller, 554 U.S. at 626-29; McDonald, 130 S. Ct. at 3046-47; Hightower, 693 F.3d at 73; Moore, 2012 U.S. App. LEXIS 25264 at *22-23.  Accordingly, because sections 456a and 456d do not impose a flat ban on plaintiffs' Second Amendment right to bear arms, the Court declines to find those sections unconstitutional solely because they impose regulations on the possession and carrying of firearms.

> **b.  The Government Does Not Enjoy Uncontrolled Discretion**

The Court finds unpersuasive plaintiffs' argument that the Police Superintendent, state officials, and Superior Court judges enjoy "uncontrolled discretion."  That

contention appears[7] to rest on a First Amendment theory of prior restraints on speech, because Supreme Court cases analyzing the text of the First Amendment "have long held that when a licensing statute allegedly vests unbridled discretion in a government official over whether to permit or deny expressive activity, one who is subject to the law may challenge it facially without the necessity of first applying for, and being denied, a license." City of Lakewood v. Plain Dealer Pub. Co., 486 U.S. 750, 755-56 (1988).  The Supreme Court recognized "time-tested knowledge that in the arena of free expression a licensing statute placing unbridled discretion in the hands of a government official or agency constitutes a prior restraint and may result in censorship." Id. at 757.  The First Circuit Court of Appeals, however, has explicitly rejected the application of the prior restraint doctrine to a Second Amendment context, Hightower, 693 F.3d at 80-83, finding the First Amendment prior restraint and overbreadth

---

[7] Plaintiffs fail to cite persuasive or controlling legal authority regarding uncontrolled discretion either in their amended complaint or their opposition to defendants' motion to dismiss. (See Docket Nos. 5 & 17.)  As the First Circuit Court of Appeals admonished, "[j]udges are not mind-readers, so parties must spell out their issues clearly, highlighting the relevant facts and analyzing on-point authority." Rodríguez v. Municipality of San Juan, 659 F.3d 168, 175 (1st Cir. 2011).  This Court will not engage in the task of developing and fleshing out legal argumentation - that is the responsibility of the party requesting relief.  See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

doctrines "a poor analogy for purposes of facial challenges under the Second Amendment." Id. at 80. Without any further guidance from plaintiffs as to the legal foundation of their claim, the Court rejects the argument that the P.R. Weapons Act vests "uncontrolled discretion" in government officials.

### c. Sections 456a and 456d Do Not Pose an Undue Burden

The fate of Plaintiffs' third argument depends on the level of scrutiny required to analyze their claim. As the Court has previously noted, the Second Amendment can trigger different levels of scrutiny based on the context of the restrictive law and the restricted activity.[8] Colon-Quiles, 859 F. Supp. 2d at 235. Plaintiffs encourage the Court to adopt a strict scrutiny standard of review, contending that "we are dealing with a fundamental right contained in the U.S. Constitution applied to the Commonwealth of Puerto Rico," and thus it is "unequivocal" that strict scrutiny applies. (Docket No. 17 at p. 23; Docket No. 5 at p. 6.) Defendants disagree, citing the Court's previous ruling in

---

[8] The Court heeds the First Circuit Court of Appeals' recent admonition that the matter of determining "what sliding scales of scrutiny might apply . . . [is] a vast terra incognita that courts should enter only upon necessity and only then by small degree." Hightower, 693 F.3d at 74. In order to evaluate plaintiffs' remaining claim, the Court necessarily broaches the issue here.

Colon-Quiles to argue that the adequate standard of review is intermediate scrutiny. (Docket No. 15 at p. 17.)

Intermediate scrutiny is the appropriate standard under which to evaluate plaintiffs' Second Amendment claims. Several circuit courts of appeals, including the First Circuit Court of Appeals, have applied intermediate scrutiny in Second Amendment cases to statutes identified as presumably "lawful regulatory measures." See, e.g., United States v. Booker, 644 F.3d 12, 25 (1st Cir. 2011) (requiring "some form of strong showing, necessitating a substantial relationship between the restriction and an important governmental objective"); United States v. Masciandaro, 638 F.3d 458, 470 (4th Cir. 2011) ("A severe burden on the core Second Amendment right of armed self-defense should require strong justification. But less severe burdens on the right, laws that merely regulate rather than restrict, and laws that do not implicate the central self-defense concern of the Second Amendment, may be more easily justified."). Sections 456a and 456d pose a less severe burden on the Second Amendment right to bear arms, regulating only the manner in which a person may exercise that right and not altogether prohibiting the exercise of such a right; thus, strict scrutiny does not apply, and

intermediate scrutiny is the more appropriate standard of review.[9]

See Colon-Quiles, 859 F. Supp. 2d at 235.

Sections 456a and 456d of the P.R. Weapons Act

pass constitutional muster.   Under an intermediate scrutiny

analysis, the Court must determine the following: whether the

asserted governmental purpose is significant, substantial, or

important; whether the connection between the challenged regulation

and that governmental purpose is reasonable; and whether the

challenged regulation burdens the fundamental right at issue more

than is reasonably necessary.   Id. (citing Marzzarella, 614 F.3d at

98 (articulating the requirements of intermediate scrutiny under

First Amendment case law.)

First, the Puerto Rico legislature enacted the

Puerto Rico Weapons Act "to achieve a more peaceful and reassuring

environment with greater public safety for [Puerto Rico] citizens

---

[9] As numerous other courts and legal commentators recognize, the application of intermediate scrutiny is consistent with the text and structure of the Supreme Court's reasoning in Heller. See, e.g., United States v. Marzzarella, 614 F.3d 85, 91 (3rd Cir. 2010) ("By equating the list of presumptively lawful regulations with restrictions on dangerous and unusual weapons, we believe the Court intended to treat them equivalently--as exceptions to the Second Amendment guarantee."); Joseph Blocher, Categoricalism and Balancing in First and Second Amendment Analysis, 84 N.Y.U. L.Rev. 375, 413 (2009) ("Heller categorically excludes certain types of 'people' and 'Arms' from Second Amendment coverage, denying them any constitutional protection whatsoever."). Accordingly, strict scrutiny does not apply.

. . . [and] to achieve an effective solution to the problem of controlling firearms in the hands of delinquents in Puerto Rico . . . ." Statement of Motives, Law No. 404, H.B. 3447 (Sept. 11, 2000). The Supreme Court has consistently recognized that the governmental interest in protecting public safety is important or even compelling. See Schenck v. Pro-Choice Network, 519 U.S. 357, 376 (1997); United States v. Salerno, 481 U.S. 739, 745 (1987); Schall v. Martin, 467 U.S. 253, 264 (1984); Terry v. Ohio, 392 U.S. 1, 22 (1968). The interests enumerated by the Puerto Rico legislature, therefore, fall under the substantial and significant government interest in ensuring the safety of all of its citizens.

Second, section 456a's licensing requirements and section 456d's permit qualifications are substantially related to that interest and do not pose an unreasonable burden. In making such a determination, "substantial deference to the predictive

judgments of [the legislature]" is warranted.[10]  Turner Broad. Sys.,
Inc. v. FCC, 520 U.S. 180, 195 (1997); McCullen v. Coakley, 571
F.3d 167, 177 (1st Cir. 2009).   The Court's role is therefore to
determine whether the legislature "has drawn reasonable inferences
based on substantial evidence."   Turner Broad., 512 U.S. at 666,
and it concludes in this case that the Puerto Rico legislature has
done so.   The P.R. Weapons Act is no political whim, because the
Puerto Rico legislature has long appreciated the dangers inherent
in the possession and carrying of firearms.   Originally enacted in
1951,[11] the P.R. Weapons Act has endured throughout the past half

---

[10] The Supreme Court has long granted deference to legislative
findings regarding matters that are beyond the competence of
courts.   See Holder v. Humanitarian Law Project, 130 S. Ct. 2705,
2727 (2010); Turner Broad. Sys., Inc., 520 U.S. at 195-96; Walters
v. Nat'l Ass'n of Radiation Survivors, 473 U.S. 305, 330-31 n.12
(1985).   "In the context of firearm regulation, the legislature is
'far better equipped than the judiciary' to make sensitive public
policy judgments (within constitutional limits) concerning the
dangers in carrying firearms and the manner to combat those risks."
Kachalsky v. County of Westchester, 2012 U.S. App. LEXIS 24363 at
*42-43 (citing Turner Broad., 512 U.S. at 665).

[11] Even before 1951, the Puerto Rico government approved laws
regulating weapons. (See P.R. Camara de Representantes, Informe—P.
De la C. 3447, pp. 1–7 (June 15, 2000)).   Puerto Rico became
subject to the Criminal Code of 1902 with the change of sovereignty
in the early twentieth century.   Id. at 3. Criminalizing the
possession or carrying of firearms and other dangerous instruments
except when established by law, the Criminal Code of 1902
influenced future weapons legislation in Puerto Rico.   Id.   For
more than a century, the Puerto Rico legislature has consistently
regulated the possession and carrying of firearms, and the 1951
enactment of the P.R. Weapons Act demonstrates the legislature's
enduring conclusion that restricting the possession and carrying of
firearms leads to public safety.

century "as a means to control crime."  Statement of Motives, Law
No. 404, H.B. 3447 (Sept. 11, 2000).  Recognizing a statistical
link between rising criminal activity in controlled substance
trafficking and the proliferation of illegal firearm use, the
Puerto Rico legislature acknowledged in 2000 that a major overhaul
of the P.R. Weapons Act was needed.[12]  It then promulgated
"innovative provisions . . . whose implementation will allow the
law enforcement agencies to be more effective in the fight against
crime . . . [and] to promote greater safety and the public welfare
of the People of Puerto Rico."  Id.

        Based on decades of review, the Puerto Rico
legislature made the reasonable inference that given the dangerous
nature of firearms, requiring a petitioner to submit payment and
documentation revealing his background, health, and character—like
third party affidavits as to the good reputation and non-violent
character of the petitioner, certification of petitioner's physical
and mental abilities, confirmation of a successful gun club course
completion, and verification of state tax and child support

---

        [12] It stated, "Today, [September 11, 2000,] after four decades
of its approval, and although it has been extensively amended, it
is evident that the Weapons Law of Puerto Rico is not the most
effective juridical instrument to deal with the different
situations related to the handling of firearms on the Island."
Statement of Motives, Law No. 404, H.B. 3447 (Sept. 11, 2000).

payments—serves the Commonwealth's interests in public safety.  The Court reminds plaintiffs that  in order to survive constitutional scrutiny, those provisions need only be substantially related to the Commonwealth's important public safety interest; a perfect fit between the means and the governmental objective is not required. Accordingly, the Court finds that sections 456a and 456d are not facially invalid as an unconstitutional burden because there is a reasonable fit between the licensing and permit regulations and the government's compelling interest in public safety.

### d.    The P.R. Weapons Act is Not Discriminatory

Finally, plaintiffs contend that the P.R. Weapons Act "gives special treatment and privilege" to government officials, (Docket No. 5 at p. 8), which "discriminates against the average citizen." Id. at p. 9; Docket No. 17 at p. 25.  In their motion to dismiss, defendants argue that plaintiffs fail to state the necessary requirements to succeed on such an equal protection[13]

---

[13] The Equal Protection Clause of the Fourteenth Amendment commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws." Plyler v. Doe, 457 U.S. 202, 216 (1982).

claim.[14]  Given that plaintiffs' Second Amendment challenge fails,
their equal protection claim is subject to rational basis review
because it involves no suspect classification.[15]   Hightower, 693
F.3d at 83.  As addressed above, sections 456a and 456d satisfy
Second Amendment review; therefore, they "necessarily pass[] the
rational basis test employed under the Equal Protection Clause."
Id. (quoting McGuire v. Reilly, 260 F.3d 36, 50 (1st Cir. 2001)).
Regarding the statutory provisions that permit certain former and

---

    [14] Defendants also argue that plaintiff Danny Williams lacks
standing to challenge this provision because he is an active duty
Coastguardsman.  (Docket No. 15 at p. 21.)  Because the Court must
address the equal protection claim at least as to plaintiff
Gonzalez, it adjudicates the claim on the merits.

    [15] The classification plaintiffs draw from the P.R. Weapons Act
is between government officials and average citizens, which is far
from any previously deemed suspect class like race, religion, or
alienage.  See New Orleans v. Dukes, 427 U.S. 297, 303 (1976).

current government officials[16] to possess and carry weapons, the
Court presumes the validity of the legislation and sustains it "if
the classification drawn by the statute is rationally related to a
legitimate [governmental] interest." City of Cleburne v. Cleburne
Living Ctr., Inc., 473 U.S. 432, 440 (1985). This is an "extremely
deferential" standard that deems a non-suspect classification
unconstitutional "only if no legitimate basis can be imagined to
support it." Beauchamp v. Murphy, 37 F.3d 700, 707 (1st Cir.
1994).

---

[16] "The Governor, legislators, mayors, secretaries, directors
and heads of agencies of the Government of Puerto Rico,
Commonwealth and federal judges, Commonwealth and federal
prosecutors, minor's advocates, the Superintendent, members of the
Police Force, officials, agents and employees of the government of
Puerto Rico who because of their office and the duties they perform
are required to carry a weapon, and every law enforcement officer,
may carry weapons. In addition, former governors, former
legislators, former superintendents, former Commonwealth and
federal judges, former Commonwealth and federal prosecutors, former
minor's advocates, former mayors of Puerto Rico, and former law
enforcement officers may carry firearms, as long as they were
honorably retired, are not restricted by this chapter from owning
firearms, and in the case of former law enforcement officers, have
served in such a capacity for not less than ten (10) years. The
members of the United States Armed Forces and the Puerto Rico
National Guard may also carry the weapons assigned to them by said
organizations without a license while engaged in the official
duties of their office. To such ends, the Superintendent shall
establish an expedited procedure whereby the abovementioned
officials, with the exception of law enforcement officers and the
Superintendent him/herself, shall be granted a weapons license with
the corresponding permit to carry a weapon." P.R. Laws Ann. tit
25, § 456c.

Plaintiffs have not met their burden of proving that the classification is "patently arbitrary, irrational, or unrelated to a legitimate legislative purpose," <u>Nat'l Educ. Ass'n-R.I. v. Ret. Bd. of R.I. Employees' Ret. Sys.</u>, 172 F.3d 22, 31 (1st Cir. 1999), and the Court finds that they cannot do so. There is nothing irrational about a general rule allowing current and former government officials to possess and carry firearms. The sensitive nature of many of their jobs—protecting our communities from crime through conducting arrests, prosecuting criminals, presiding over litigation, and creating legislation, for example—subjects them to additional risks of danger.[17] The P.R. Weapons Act thus affords such officials an opportunity to defend themselves and protect their families by having the right to possess and carry firearms. <u>See</u> <u>id.</u> "Where, as here, there are plausible reasons for [the legislature's] action, our inquiry is at an end." <u>U.S. R.R. Ret. Bd. v. Fritz</u>, 449 U.S. 166, 179 (1980). Accordingly, the statute is rationally related to a legitimate

---

[17] See Congress' discussion of the background and need for legislation called the Law Enforcement Officers Safety Act, 18 U.S.C. §§ 926(B)-(C), which allows certain current and retired government officials to carry concealed weapons throughout the United States in the interest of safety. H.R. Rep. No. 108-560, at 3-4 (2004).

government interest in the welfare and safety of the government's officials, and plaintiffs' equal protection claim must fail.

## III. CONCLUSION

For the reasons discussed above, the Court finds that plaintiffs fail to state a claim upon which relief can be granted because the P.R. Weapons Act's regulation of firearms is constitutional; Puerto Rico government officials do not enjoy uncontrolled discretion in granting or denying weapons licenses or permits to carry weapons; sections 456a and 456d pass intermediate scrutiny; and the P.R. Weapons Act is not discriminatory. Accordingly, the Court **GRANTS** defendants' motion to dismiss pursuant to Rule 12(b)(6) and **DISMISSES WITH PREJUDICE** all of plaintiffs' claims.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, December 21, 2012.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE